UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

IN RE:

KRUGER PROPERTIES, LLC,

Debtor.

Filed / Docketed
May 27, 2009

Case No. 09-10336-R
Chapter 11

### ORDER DENYING KRUGER PROPERTIES, LLC'S MOTION TO VACATE THE ORDER OF DISMISSAL

Before the Court is Kruger Properties, LLC's Motion to Vacate the Order of Dismissal, filed on April 14, 2009, as amended ("Motion to Vacate"), and the Response and Objection to Kruger Properties, LLC's Motion to Vacate the Order of Dismissal of this Bankruptcy Case, filed by Arvest Bank (the "Bank") on April 23, 2009. The Court held an evidentiary hearing on the Motion to Vacate on May 14, 2009.

**I.    Jurisdiction**

The Court has jurisdiction of this core proceeding by virtue of 28 U.S.C. §§ 1334, 157(a) and (b)(1); and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

**II.    Procedural history**

On February 13, 2009, Kruger Properties, LLC (the "Debtor") filed a petition seeking relief under Chapter 11 of the Bankruptcy Code. The Debtor owns property on which an office building is situated. The Bank holds a mortgage on the property securing debt in excess of $900,000. This is a single asset real estate case, with the Bank being the only secured creditor and apparently the largest unsecured creditor. The Bank was in the process of foreclosing on the real property when the Debtor filed its petition. In fact, the bankruptcy

was filed one business day before the hearing set for confirmation of a sheriff's sale of the property to a third party.

On March 5, 2009, the Bank filed Arvest Bank's Motion to Dismiss or, in the Alternative, Motion for Relief from Stay Pursuant to 11 U.S.C. Section 362(d), for Abandonment of Property Pursuant to 11 U.S.C. Section 554(b) and Notice of Opportunity for Hearing ("Motion to Dismiss," Doc. 29).  The same day, the Bank mailed a copy of the Motion to Dismiss to the Debtor at the mailing address reflected in the petition.  See Certificate of Service, Doc. 32.  The Motion to Dismiss contained the notice of opportunity for hearing language required by Local Rule 9013-1(B), *i.e.*, "[i]f you do not want the Court to grant the requested relief, or you wish to have your views considered, you must file a written response or objection to the requested relief . . . no later than 15 days from the date of filing of this request for relief. . . . If no response or objection is timely filed, the Court may grant the requested relief without a hearing or further notice." Motion to Dismiss at 11.  In the motion, the Bank alleged three grounds for dismissal under 11 U.S.C. § 1112(b)(1):

> First, that the Debtor allowed insurance coverage on the Bank's collateral lapse;
>
> Second, that the Debtor failed to timely satisfy filing and reporting requirements established by the Bankruptcy Code and Rules; and
>
> Third, that the Debtor filed bankruptcy solely to frustrate or delay the Bank's right to foreclose on its collateral, and that there is no possibility of reorganization, as the Debtor reported no income, which justifies dismissal for filing in bad faith, especially because the estate consisted of a single real estate asset.

The Debtor did not object or otherwise respond to the Motion to Dismiss.  On March 31, 2009, twenty-six days after the motion was filed, the Bank filed a request for entry of an

2

order of dismissal (Doc. 41). On April 1, 2009, the Court granted the Bank's motion and entered an Order of Dismissal (Doc. 42). On that same date, the Bank mailed a copy of the Order of Dismissal to the Debtor at the mailing address set forth in the Debtor's petition.

More than ten days later, on April 14, 2009, the Debtor filed his Motion to Vacate the Order of Dismissal (Doc. 45). Although the Debtor does not cite any rule, the Court assumes that it seeks to vacate the order pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, made applicable to bankruptcy cases by Bankruptcy Rule 9024.

### III. Contentions of the parties

The Debtor alleges three grounds for relief from the dismissal order under Rule 60(b):

First, the Debtor contends that the Bank committed fraud, misrepresentation or misconduct in connection with the Bank's representation in its Motion to Dismiss that (a) the insurance coverage on the Bank's collateral had lapsed, (b) the Debtor had no income and therefore could not reorganize, and (c) the Debtor failed to timely file certain documents. The Court interprets this as a request for relief under Rule 60(b)(3).

Second, the Debtor pleads that its attorney's inexperience, inadvertence and excusable neglect resulted in its failure to timely file the required documents and reports, and that the Debtor's attorney's ignorance of the applicable rules also resulted in its failure to respond to the Motion to Dismiss. This appears to be a request for relief under Rule 60(b)(1).

Third, the Debtor argues that the Bank did not properly serve the Debtor with the Motion to Dismiss because it did not send a "file-stamped" copy. The Court interprets this as a request for relief under Rule 60(b)(6).

The Debtor has burden of proving grounds for relief under Rule 60(b), and since the order was entered by default, the Debtor must also establish a meritorious defense to the Bank's Motion to Dismiss. See White v. Cassey, 1994 WL 395902 (10th Cir. 1994); U.S. v. Timbers Preserve, 999 F.2d 452, 454 (10th Cir. 1993). The Debtor is required to present a

potentially meritorious defense in order to give this Court "a chance to avoid the useless exercise of vacating an undoubtedly correct judgment." White, 1994 WL 395902, at *2.

In addition to considering the existence of grounds for relief and whether the Debtor has a chance of prevailing if the Order of Dismissal is vacated, the Court may also consider whether the Debtor's culpable conduct caused it to default and whether the Bank will be prejudiced if the order is set aside. Timbers, 999 F.2d at 454.

**IV.   Findings of fact and conclusions of law**

    A.   Request for Relief Under Rule 60(b)(3)

Rule 60(b)(3) provides that "the court may relieve a party . . . from a final judgment, order, or proceeding for . . . fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3).

With respect to the Debtor's allegation that the Bank misrepresented that its collateral was uninsured, the Debtor presented evidence that it did in fact have property insurance covering the Bank's collateral at the time the Bank filed its Motion to Dismiss. However, the Court finds that the Bank was justified in believing that the property was not insured by the Debtor. The evidence shows that the Debtor's policy had lapsed on June 7, 2008. In August 2008, when the Bank learned of the lapse, it purchased insurance on the property to protect its collateral at a cost of over $13,000, which was added to the debt secured by the property. The Bank thereafter requested that the Debtor produce evidence that it had reinstated its insurance policy so that the Bank could cancel the forced-placed policy and obtain a refund of a significant portion of the premium. The Debtor never provided the Bank with such evidence, and the Bank did not have any other way to determine whether the

Debtor had reinstated its policy. Thus, at the time the Bank filed its Motion to Dismiss, it justifiably believed that the Debtor had failed to insure the property.

On March 26, 2009, the Bank's counsel learned that the Debtor had produced a copy of an insurance policy to the United States Trustee. The Bank's counsel called the agent listed on the policy to confirm that the policy insured the property at issue and was in effect. However, the agent advised the Bank's counsel that the Debtor's policy had been canceled. Thus, the Bank was still justified in believing that its collateral was not insured by the Debtor at the time it submitted its request for entry of order of dismissal on March 31, 2009.

Thereafter, on April 14, 2009, after receiving the Debtor's Motion to Vacate, which alleged that the insurance policy was in effect, the Bank's counsel called the Debtor's insurance agent again. Only at that point was the Bank made aware that the agent had been mistaken in advising that the Debtor's policy had been terminated, and that the Debtor in fact had insured the property as of August 22, 2008, effective to August 22, 2009. At the hearing on the Motion to Vacate, however, the insurance agent testified that the premium payment due March 23, 2009, had not been paid and a notice of cancellation had been issued to the Debtor, but that the policy would not be canceled if the premium was paid by May 22, 2009. Apparently the April 2009 payment was not made either, as the insurance agent testified that monthly payments were $167 and the Debtor would owe approximately $500 on May 22, 2009. The Debtor had not made the missed premium payments as of the date of the hearing (May 14, 2009). The Debtor's representative, Joel Kruger, stated that he intended to make the payment before the cancellation date *if the Motion to Vacate is granted*. Apparently, he is willing to allow the insurance to lapse if the Debtor's Motion to Vacate is not granted.

The Court finds and concludes that the Debtor failed to meet its burden of showing that the Order of Dismissal should be set aside on the basis of fraud, misrepresentation or misconduct in connection with the Bank's allegation that the Debtor failed to insure property of the estate. To the extent that this mistake of fact may have influenced the entry of the Order of Dismissal, the Court finds that relief is not required under Rule 60(b)(3) because other grounds for dismissal exist.

With respect to the Debtor's allegation that the Bank misrepresented that the Debtor could not reorganize because it had no income, again, the Court finds that the Bank was justified in making such a claim, because the Debtor's own statement of financial affairs (Doc. 24), which was filed the day before the Bank filed its Motion to Dismiss, indicated that the Debtor had no year-to-date gross income, and had received no gross income in the two years prior to filing. Although Mr. Kruger later stated at the meeting of creditors that some offices in the building were occupied by tenants, at the evidentiary hearing, the Debtor did not produce any credible evidence establishing income that had been or could be generated by the property, much less income sufficient to fund a plan of reorganization. Mr. Kruger testified that the DIP account established during the Chapter 11 case held deposits of only approximately $1,500. The Court finds that the Debtor failed to establish the Bank misrepresented any fact concerning the Debtor's income.

With respect to the Debtor's allegation that the Bank misrepresented that the Debtor failed to file a "Declaration Under Penalty of Perjury (Form B2)," the Court finds that the Bank's counsel was mistaken, and that such document was filed by the Debtor, but it was

filed only after a deficiency notice was entered, and even then, it was not filed by the deadline set in the deficiency notice.

The Bank's contention that the Debtor has failed to file documents required of a Chapter 11 debtor is well taken, however. Importantly, the Debtor never filed a motion under Section 327 of the Bankruptcy Code to seek approval of employment of counsel. Instead, the Debtor's sole member, Mr. Kruger, purported to represent the Debtor as a debtor in possession (and thus as trustee of the estate), and filed pleadings and documents on behalf of the Debtor. However, Mr. Kruger is not a disinterested person under Section 101(14) of the Bankruptcy Code, as he is the sole equity owner, an insider, and a potential creditor, as he testified that he has paid the Debtor's debts with his own funds, both prior to and after the Debtor filed bankruptcy. Further, because Mr. Kruger testified that he traded services to the Debtor for rent on his office space in the building, it appears that a disinterested attorney for the Debtor would have grounds to question whether Mr. Kruger owes rent to the Debtor. The failure to file pleadings to seek approval of the employment of disinterested counsel was and is sufficient grounds for dismissal under Section 1112(b)(4)(F) of the Bankruptcy Code. In addition, the Debtor's initial report was not filed until after the meeting of creditors, was untimely, and was wholly inadequate to convey the information required by Section 1116 of the Bankruptcy Code, as it lacked a balance sheet, a statement of operations, a cash-flow statement, a projection of income and expenses, and tax returns. Mr. Kruger testified that the Debtor has *never* filed any tax returns, but considers that fact irrelevant because, in his opinion, the Debtor does not owe any taxes. Mr. Kruger testified that the IRS advised him not to file returns, but the Court discounts that testimony as not credible.

The Debtor did not establish that the Bank made any *intentional or material* misrepresentations concerning the Debtor's failure to satisfy filing and reporting requirements, nor did the Debtor establish that the Bank's Motion to Dismiss could not be sustained on that ground. Thus, to the extent the Debtor's Motion to Vacate is premised upon Rule 60(b)(3), the Debtor failed to meet its burden of showing entitlement for relief from the dismissal order.

B.      Request for Relief Under Rule 60(b)(1)

Rule 60(b)(1) provides that that "the court may relieve a party . . . from a final judgment, order, or proceeding for . . . "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Mr. Kruger contends that his ignorance of the rules of bankruptcy procedure, this Court's local rules, and the mechanics of the Court's electronic filing system constitute inadvertence or excusable neglect, justifying relief from the Order of Dismissal. Specifically, Mr. Kruger stated that although he prepared a response and objection to the Bank's Motion to Dismiss, he never filed it because he thought the Court would set a hearing on the Motion to Dismiss. Mr. Kruger admits that he did not read or understand the language in the motion that warns that the failure to file an objection or response to the motion could result in the entry of an order without further notice or a hearing. Apparently he did not read Local Rule 9013-1 either, which provides a detailed explanation of the Notice of Opportunity for Hearing procedure, nor did he locate 11 U.S.C. § 102(1) which is referred to in Local Rule 9013-1, and which provides that the language "after notice and a hearing" in a statute (such as Section 1112) means that a hearing on a motion is required only if, after notice, a party requests a hearing.

Even after the Bank filed its Request for Entry of Order, Mr. Kruger did not file the Debtor's objection because he did not think the Court would enter the order the next day. Mr. Kruger testified that he does not typically practice in federal court and that matters generally were not adjudicated as quickly in state court.

The Court finds and concludes that Mr. Kruger's lack of experience in bankruptcy matters and his lack of familiarity with federal court procedure constitutes neglect and inadvertence, but his failure to read the Notice of Opportunity for Hearing language in the Motion to Dismiss and his failure to familiarize himself with basic rules of procedure, especially while purporting to represent a Chapter 11 debtor in possession, is not "excusable" and does not justify relief from the Order of Dismissal under Rule 60(b)(1). See U.S. v. Torres, 372 F.3d 1159 (10th Cir. 2004), *quoting* Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. Pp, 507 U.S. 380, 392 (1993) ("inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect.").

C.  Request for Relief Under Rule 60(b)(6)

Rule 60(b)(6) provides that "the court may relieve a party . . . from a final judgment, order, or proceeding for . . . any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). In its Motion to Vacate, the Debtor alleges that the Bank failed to serve counsel for Debtor with the Motion to Dismiss and failed to serve the Debtor with a file-stamped copy of the Motion. First, no counsel was ever approved to represent the Debtor. Second, the Bank mailed the Motion to Dismiss to the Debtor at its stated mailing address, and Mr. Kruger admits the Debtor received the motion, albeit, not a file stamped copy of it. Mr. Kruger had an opportunity to review the docket sheet after he received the Motion to Dismiss to

9

determine when it was filed. In any event, Mr. Kruger testified that he received and read the Motion to Dismiss and prepared an objection and response to the motion, but, for whatever reason, simply chose not to file the objection. The Court finds and concludes that the Debtor received actual and timely notice of the Motion to Dismiss, and no relief from Order of Dismissal is required under Rule 60(b)(6).

>    D.    <u>Failure to the Bank's Rebut Allegations of Bad Faith</u>

Although the Order of Dismissal is justified by the Debtor's failure to satisfy filing and reporting requirements, the Bank also alleged in its motion facts to establish that the Debtor filed its bankruptcy case solely to frustrate the pending confirmation of the sheriff's sale of the property, and to prevent the Bank from enforcing its rights under the mortgage. The evidence presented by the Debtor at the hearing did not negate the facts alleged by the Bank in support of its position that the Chapter 11 case was filed in bad faith.

Section 1112(b)(4) of the Bankruptcy Code does not present an exclusive list of all conditions that might constitute cause for dismissal of a Chapter 11 case; a Chapter 11 case may be dismissed if it was filed in bad faith. <u>See</u> <u>In re Muskogee Environmental Conservation Co.</u>, 236 B.R. 57, 66 (Bankr. N.D. Okla. 1999) (and cases cited therein). Filing Chapter 11 solely to frustrate or delay a secured creditor's right to foreclose on the debtor's single real estate asset may constitute a bad faith filing. <u>See, e.g.</u>, <u>Udall v. FDIC (In re Nursery Land Development, Inc.)</u>, 91 F.3d 1414 (10th Cir. 1996); <u>Laguna Associates Ltd. Partnership v. Aetna Cas. & Sur. Co. (In re Laguna Associates Ltd. Partnership)</u>, 30 F.3d 734 (6th Cir. 1994) (relief from stay was properly granted on the ground that a Chapter 11 petition

10

filed one day before foreclosure sale was filed in bad faith); In re Springs Hospitality, Inc., 2006 WL 2458679 (Bankr. D. Colo.).

The "classic badges of a bad faith bankruptcy filing" are present in this case. Udall, 91 F.3d at 1416. The Debtor has no on-going business, no employees, and only one asset, and that asset is mortgaged to a single creditor. The Bank began foreclosure proceedings in February 2008, and obtained a judgment in foreclosure against the Debtor in July 2008. Thereafter, the Bank completed all procedures required to set a sheriff's sale of the property for October 7, 2008. On the day of the sheriff's sale, the Debtor obtained from the state court an *ex parte* order staying the sheriff's sale, which order the state court set aside in December 2008. The Bank then issued its second notice of sheriff's sale, scheduling the sale for January 27, 2009. On that date, the property was sold to a third party bidder for $741,100.00, and the purchaser deposited ten percent of that amount with the state court pending confirmation of the sale. The Bank filed its motion to confirm the sheriff's sale, and a confirmation hearing was set for Tuesday, February 17, 2009. On February 13, 2009 (the Friday before a holiday weekend), the Debtor filed its Chapter 11 petition, which stayed the confirmation of the sale. The Debtor did not present any evidence that it had any legitimate defense to the foreclosure judgment.

Moreover, the Debtor presented no credible evidence of any reasonable likelihood that the Bank's debt could be refinanced and the property redeemed, or that investors were willing to invest capital in the Debtor, or that the property could generate income sufficient to meet the debt service, even if the Bank's debt was refinanced by another lender. Mr. Kruger testified that currently, the Debtor was collecting (or was owed, but not collecting)

$2,000-3,000 per month from month-to-month tenants, but the Debtor had only collected $1,500 during the pendency of the bankruptcy case. The Debtor did not present any evidence concerning the expense of maintaining the property (other than $167 per month for property insurance). Although Mr. Kruger testified that he had often received oral offers to purchase the property for in excess of $1 million, he also testified that he had convinced the taxing authorities to reduce the assessed value of the property to approximately $480,000. In light of the Bank's debt of in excess of $900,000, the Court finds that the Debtor failed to present any credible evidence that the Debtor has equity in the property. Under these circumstances, the Court finds and concludes that the Chapter 11 petition was filed solely to frustrate or delay the confirmation of the sheriff's sale.

  E. <u>Prejudice to the Bank</u>

Furthermore, the Court finds that the Bank would be prejudiced if the Order of Dismissal is set aside, because revival of this case would reimpose the stay, and require the Bank to again seek adequate protection, modification of the stay, or dismissal before being allowed to finally enforce its rights under the mortgage. Further delay may affect the value of the property and thus the willingness of the third party purchaser to consummate the sheriff's sale.

Moreover, the Court shares the Bank's concern that the Debtor (or more precisely, Mr. Kruger, the Debtor's sole member) is unable or unwilling to take appropriate measures to protect and preserve the Bank's collateral. Prior to the foreclosure judgment, the Bank rescued the property from forfeiture because the Debtor failed to pay property taxes for the years 2004 through 2007. The Bank paid $40,000 in delinquent taxes on the eve of a tax sale

of the property. Mr. Kruger testified that he had not caused the Debtor to pay the taxes because the Bank had agreed to pay the property taxes, which the Court finds patently incredible. The Debtor has not paid property taxes for 2008. Also prior to the foreclosure judgment, the Debtor allowed the policy insuring the property to lapse, and the Bank was forced to purchase insurance on the property to protect its collateral. In March 2009, during the pendency of the Chapter 11 case, the Debtor again failed to pay the policy premiums. As of the date of the hearing, three months of premiums were due by May 22, 2009, and if not timely paid, the policy would again lapse.

## V.     Conclusion

For all the reasons stated herein, the Court concludes that the Motion to Vacate the Order of Dismissal should be denied. A separate judgment will be entered contemporaneously herewith.

DANA L. RASURE
UNITED STATES BANKRUPTCY JUDGE